**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JEFFREY SCOTT FIELDS,** | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | **A-14-CA-052-SS** |
| | § | |
| **WILLIAM STEPHENS, Director,** | § | |
| **Texas Dept. of Criminal Justice–** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE SAM SPARKS
        UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1); Respondent's Answer (Document 16); and Petitioner's response (Document 28), rebuttal declarations in support (Document 29), and brief in support (Document 30). Petitioner, proceeding pro se, has been granted leave to proceed in forma pauperis. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

**STATEMENT OF THE CASE**

**A.     Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 390th District Court of Travis County, Texas, in cause number D-1-DC-04-904170.  A jury found Petitioner guilty of aggravated assault causing serious bodily injury.  Petitioner was subject to three sentence enhancements based on previous felony convictions.  He was sentenced to life imprisonment to be served consecutively to another life sentence from a different criminal conviction.

Petitioner appealed, and the Third Court of Appeals of Texas affirmed his conviction and sentence.  *Fields v. State*, No. 03-06-00106-CR, 2009 WL 638180 (Tex. App.—Austin Mar. 12, 2009).  Petitioner did not file a petition for discretionary review (PDR) but did file a state application for a writ of habeas corpus.  Among his sixteen grounds for relief, Petitioner asserted his appellate counsel had failed to notify Petitioner of his right to file a PDR after the Third Court of Appeals had rejected his appeal.  The Texas Court of Criminal Appeals ordered factual findings on Petitioner's application.  On September 14, 2011, the Court of Criminal Appeals adopted the factual findings of the trial court, granted Petitioner relief on his claim regarding his PDR, and allowed him to file an out-of-time PDR.  The Court of Criminal Appeals dismissed the remaining claims in Petitioner's application for habeas corpus relief.  Ultimately, the Court of Criminal Appeals refused Petitioner's PDR, *Fields v. State*, PD-1564-11 (Tex. Crim. App. Feb. 29, 2012); and on May 16, 2012, it denied his motion for rehearing.

Petitioner then filed a second state application for a writ of habeas corpus. The Court of Criminal Appeals denied the application without written order. *Ex parte Fields*, WR-74,684-05, at cover (Tex. Crim. App. Nov. 27, 2013).

**B.      Factual Background**

The evidence at trial showed that in December 2002, a woman known by the pseudonym Tina White worked for an escort service. She received a call from a man identifying himself as "Martin Jones," who requested her services. The two later met at a motel. During their discussion of payment, the man hit White's cell phone from her hand, lunged at her, knocked her to the floor, and choked her into unconsciousness. White awoke to find the man had removed her clothing from the waist down and was smoking crack cocaine on the bed. He refused to let her join him on the bed. When she attempted to sit on the bed, nonetheless, he again attacked her and choked her into unconsciousness. White awoke again and attempted to escape the hotel. The man again attacked her and choked her into unconsciousness. When White awoke the final time, the man ordered her to get her clothes and purse. He then snatched her purse, left the hotel, broke the driver's-side window of White's car, and then fled in her stolen car. DNA and fingerprint evidence linked Petitioner to the hotel and to blood stains in White's car.

**C.      Petitioner's Grounds for Relief**

Petitioner raises three primary grounds for relief:

1.      Petitioner's trial counsel was ineffective for:

    a.      failing to hire an expert witness;

    b.      failing to obtain a ruling on his pretrial motion to hire a private investigator;

    c.      failing to utilize DNA expert and evidence;

      d.     failing to investigate and present a defense of self defense at trial;

      e.     failing to object to, and request a jury instruction regarding, the court's admission of extraneous offenses; and

      f.     failing to object to the State's closing argument.

2.     Appellate counsel was ineffective for:

      a.     failing to move for a new trial; and

      b.     failing to raise meritorious grounds on appeal.

3.     The trial court erred by reappointing trial counsel for Petitioner's appeal, despite a purported conflict of interest.

## D.    Exhaustion of State Court Remedies

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application.

## E.    Request for Evidentiary Hearing

Petitioner, without any elaboration or argument, requests an evidentiary hearing on his petition.  The Court will address this request below.

## DISCUSSION AND ANALYSIS

## A.    The Antiterrorism and Effective Death Penalty Act of 1996

The Supreme Court has summarized the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act.  *See Harrington v. Richter*, 562 U.S. 86, 97–100 (2011).  The Court noted that the starting point for any federal court in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Court noted that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington*, 562 U.S. at 98.

One of the issues *Harrington* resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Id.* Following all of the Courts of Appeals' decisions on this question, *Harrington* concluded that the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* (citations omitted). The Court noted that it had previously concluded that "a state court need not cite nor even be aware of our cases under § 2254(d)." *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)). When there is no explanation with a state-court decision, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." *Id.* And even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due to that decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Id.*

As *Harrington* noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Harrington*, 562 U.S. at 100 (citing 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

*Id.* at 740–41 (quotation and citation omitted). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 741 (quotation and citation omitted). The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e). That section states that a federal court must presume state court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). But absent such a showing, the federal court must give deference to the state court's fact findings. *Id.*

**B.**     **Evidentiary Hearing**

Petitioner asserts he is entitled to an evidentiary hearing because he has established colorable grounds for relief and because the state court did not grant him a hearing during his collateral appeal in that court.

Petitioner's request is governed by section 2254(e)(2), which provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
> (A)     the claim relies on–
> (i)      a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii)     a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B)     the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Petitioner has not cited a new constitutional rule announced by the Supreme Court and made retroactive to cases on collateral review.  Nor has he alleged facts not previously discoverable, whether they would have altered the guilty verdict or not.  His allegations concern his various grounds for relief also raised in his state application for habeas corpus relief based on facts he says were available during his trial but that counsel failed to present.  Petitioner is not entitled to an evidentiary hearing on his petition.

**C.**     **Ineffective Assistance of Trial Counsel**

In his first ground for relief, Petitioner argues he was denied effective assistance of counsel. Petitioner raised this same issue in his second state application for habeas corpus relief.  The Court of Criminal Appeals rejected the merits of Petitioner's claim.  As such, the AEDPA limits the scope

of this Court's review to determining whether the adjudication of Petitioner's claim by the state court either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 686–89. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citation omitted). Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being

challenged.  *Id.* at 695–97.  Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 687.

       1.   <u>Failure to Hire an Expert Witness</u>

Petitioner first argues counsel failed to move for appointment of a medical doctor and odontologist (a forensic dentist) to investigate and prepare counsel to cross-examine the State's medical experts.  Petitioner says the medical experts could have helped Petitioner advance his claim of self-defense and rebut White's testimony, which Petitioner says was false.

Claims regarding uncalled witnesses are disfavored in petitions under § 2254 "because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative."  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).  To prevail on this claim, Petitioner would have to name the witness or witnesses that should have been called, demonstrate the witness's ability and willingness to testify, provide the contents of the proposed testimony, and show the testimony would have aided his self-defense theory.  *See id.* These requirements apply to expert witnesses and lay witnesses.  *See id.*; *Evans v. Cockrell*, 285 F.3d 370, 377–78 (5th Cir. 2002).

Petitioner fails to satisfy several of these requirements.  He does not name any particular witness counsel should have called, allege any particular medical doctor or odontologist was available and willing to testify, provide any suggestion regarding what that expert witness would have said, or explain how that proposed testimony would have aided his defense.  Petitioner's

unsupported allegation that an unspecified medical witness should, and could, have been called is insufficient to warrant relief on this claim.  *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

2.    Failure to Obtain Pretrial Ruling on Motion to Appoint Private Investigator

Petitioner next argues counsel "failed to have the trial court rule on counsel's filed motion to appoint defense designated private investigator."  Doc. 1 at 6.  Thus, Petitioner says, that investigator never gave testimony Petitioner alleges he would have given regarding Petitioner's self-defense claim and eyewitness testimony, as well as rebuttal testimony to the State's expert witnesses.

Petitioner misstates the facts.  Counsel did secure a ruling on his motion for appointment of a private investigator, and the result favored Petitioner.  The trial court granted the motion and allocated $500 for payment of the investigator.  Doc. 13-2 at 103.[1]  Whatever issues Petitioner has with the evidence the investigator did or did not uncover is another matter.  This basis for ineffective assistance has no merit.[2]

3.    Failure to Utilize DNA Expert and Evidence

Petitioner next alleges counsel failed to utilize a defense DNA consultant, William Watson, who, Petitioner says, could have tested the State's untested blood evidence, some of which Petitioner insists would be exculpatory.  Counsel's failure, Petitioner says, prevented him from presenting his claim of self-defense, rebutting the State's medical experts, and countering White's testimony.

---

[1] The page numbers for documents 13 and 14, and their sub-documents, refer to the electronic-document page numbers located at the top of the page of those document.

[2] In his traverse, Petitioner alleges his counsel "swept under the rug" this appointment and neglected to make Petitioner or the investigator aware of the appointment.  Doc. 28 at 14.  There is no evidence in the record to support Petitioner's late assertion.

The record reveals Watson was appointed as an expert witness; the trial court ordered the Texas Department of Public Safety to transmit to him the property on which it had conducted DNA analysis.  Doc. 13-4 at 54.  Petitioner was granted a continuance to analyze the DNA evidence reviewed by the State.  Doc. 13-9 at 3.  Though Watson was not called as a witness at trial, Petitioner does not specify what Watson could have testified about that would have aided his defense, *see Evans*, 285 F.3d at 377–78; nor does he explain whether Watson could have, and would have, testified in the first place, *see Day*, 566 F.3d at 538.  Petitioner also fails to suggest the untested DNA evidence actually would have been exculpatory; that he says it would have been does not make it so.  *Id.*  As with Petitioner's first ground for relief, he provides insufficient information to warrant relief on this ground.

4.     Failure to Investigate and Present Defense

Next, Petitioner accuses counsel of failing to develop any viable defense, including a claim of self-defense Petitioner says he told counsel to use.  Instead, counsel presented no witnesses and only cross-examined the State's witnesses.

Counsel in criminal cases "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland v. Washington*, 466 U.S. 668, 691 (1984).  The wide deference given to counsel's decisions, however, is not without bounds.  For example, counsel's failure to interview eyewitnesses to a crime may constitute "constitutionally deficient representation," even if counsel vigorously cross-examines those eyewitnesses at trial.  *Anderson v. Johnson*, 338 F.3d 382, 391 (5th Cir. 2003) (quoting *Bryant v. Scott*, 28 F.3d 1411, 1418 (5th Cir. 1994).

11

Petitioner's chief complaint regards counsel's alleged failure to interview Mary Piedad,[3] a housekeeper who was working at the Motel 6 where White met Petitioner.  Petitioner says Piedad witnessed the entire scuffle between White and Petitioner and could have testified in support of Petitioner's claim of self-defense.  According to the record, however, Ms. Piedad witnessed only a few seconds of the end of the confrontation.  Speaking through a translator, she told police what she had seen:

> [S]he was by room 127 and heard a female screaming in room 127.  The door to 127 was partially open and the maid looked in and saw a male subject hitting the victim. The male subject came over to the door and shut it.  A short time later the maid saw the male subject come out of room 127 and he was not wearing a shirt but had some pants on.  The male subject broke one of the windows to the victims car and he got in and drove off.

Doc. 14-22 at 224.  Ms. Piedad's observations are consistent with White's testimony that her attacker had punched her repeatedly in her face and head, fled the motel room without a shirt, broke the driver's-side window of her car, and drove away in her car.  Doc. 13-11 at 26–29.  There is no evidence Ms. Piedad witnessed any other part of the fight, and neither the State nor Petitioner's counsel called her to testify at the trial.  Petitioner also says, without elaboration, that counsel should have called various other witnesses at trial.

Petitioner has not demonstrated counsel's performance fell below an objective standard of reasonableness.  Most of his complaints lack details regarding what a witness would have said or how that witness's testimony would have affected the outcome of the trial.  *See Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (noting claim that counsel failed to investigate must include specific allegations about what a reasonable investigation "'would have revealed and how it would

---

[3]The record refers to this witness as "May Piedad" in some places and "Mary Piedad" in others.

have altered the outcome of the trial'" (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989))).   Nor is there evidence counsel failed to interview Ms. Piedad before trial; it is equally plausible counsel decided not to call Ms. Piedad because, as noted above, she had witnessed only a few seconds of the altercation between White and Petitioner; and what Ms. Piedad had seen would not have aided Petitioner's claim of self-defense.   Counsel's performance was not deficient based on his decision not to pursue this defense.

Even assuming counsel had in some way failed to conduct a proper investigation, Petitioner fails to demonstrate how he was prejudiced.   The evidence against Petitioner was strong; and he has not pointed to anything suggesting the testimony of Ms. Piedad, or any other witness, would have changed the verdict.   *See Johnson v. Scott*, 68 F.3d 106, 109 n.4 (5th Cir. 1995) (noting that, to find prejudice, a court must conclude "a reasonable jury could not have reached the same verdict if counsel had performed effectively").   This ground for relief fails.

5.   Failure to Object to, and Request Jury Instruction Regarding, the Trial Court's Admission of Extraneous Offenses

Petitioner next asserts counsel should have objected to the trial court's admission of evidence of unadjudicated offenses involving sexual assault, crack cocaine, and drug paraphernalia.   He says this evidence had a "profound, prejudicial impact" on the jury's deliberations.   Doc. 1 at 7a. Petitioner also says counsel should have requested a jury instruction regarding this improperly admitted evidence to limit the State's use of the evidence and disallow the jury from using the evidence to prove Petitioner acted in conformity with his past crimes.

Once again, the record belies Petitioner's allegations.   The State notified Petitioner and the trial court before trial that it planned to introduce evidence of Petitioner's extraneous offenses,

including allegations of sexual assault from July 1992, a sexual-assault conviction from March 1993, and Petitioner's use of crack cocaine during this offense against White. Doc. 13-1 at 105. Counsel thereafter challenged the State's introduction of the evidence of Petitioner's extraneous offenses. Doc. 13-2 at 82–84. Counsel requested that, if admitted, the trial court make findings of fact to support its admission of the extraneous-offense evidence and "properly instruct the jury to confine and limit its consideration of such evidence to the purpose articulated by the State" under the Texas Rules of Evidence. *Id.* at 83. That counsel was unsuccessful in keeping out this evidence or obtaining the requested instruction does not make his performance deficient. *See Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983).

And even assuming counsel's performance was deficient, Petitioner again fails to show how that performance prejudiced him. The evidence of Petitioner's conviction for sexual assault was admitted during the penalty phase only, which Texas law allows. *See Givens v. Cockrell*, 265 F.3d 306, 309 n.3 (5th Cir. 2001) (citing *Voisine v. State*, 889 S.W.2d 371, 372 (Tex. App.–Houston [14th Dist.] 1994), and noting change in Texas law allowing "admission of evidence of unadjudicated extraneous offenses at the sentencing phase of a noncapital crime"). And even if evidence of Petitioner's crack-cocaine smoking should not have come into evidence, relief under § 2254 is appropriate "only if the error is of such magnitude that it resulted in 'fundamental unfairness.'" *Hafdahl v. Johnson*, 251 F.3d 528, 536 (5th Cir. 2001). Petitioner has not demonstrated how admission into evidence that he was smoking crack cocaine at the time of the assault was fundamentally unfair. Petitioner is not entitled to relief on this ground.

14

6.      Failure to Object to the State's Closing Argument

Petitioner also says his trial counsel failed to object to comments the State made in its closing argument.  Petitioner says the State improperly remarked that the blood in the motel room belonged solely to White.[4]  He says that comment is false and speculative because the evidence showed some of the blood found in the motel room was Petitioner's.

To warrant relief based on a prosecutor's improper closing argument, Petitioner must show the remarks were "a 'crucial, critical, [or] highly significant factor'" behind the verdict and that the verdict "would have been different had the prosecution not made the statements." *Little v. Johnson*, 162 F.3d 855, 862 n.7 (5th Cir. 1998) (quoting *Lowery v. Estelle*, 696 F.2d 333, 342 (5th Cir. 1983)).

Petitioner takes issue with the following statements from the State's closing argument:

> All that blood that you see on some of the exhibits and in the photographs, the drops of blood from the three areas where Jeffrey Fields assaulted Tina White at the foot of the east bed, the significant amount of blood over by the air conditioner, the significant amount of blood, that's Tina White's blood.

Doc. 13-12 at 155.  There was no evidence presented to support Petitioner's assertion that much of the blood found on the carpet is his from a wound White inflicted to his back.  Though the State's DNA expert did not test every sample on the floor, neither did Petitioner present evidence showing it was his blood on the floor.  As the State pointed out in rebuttal, the areas in the motel room where the blood was found coincided with White's testimony regarding where she was attacked by Petitioner and where she had fallen unconscious to the floor.  *Id.* at 171.  The State did note the bloodstains found on sweatpants in the motel room and outside where White's car was parked

---

[4]In his petition, Petitioner also claimed the State improperly said Petitioner choked White until "her eyes were bulging out of her head" and that strips of towel found in the motel room were going to be used by Petitioner to restrain White so he could sexually assault her.  In his traverse, however, Petitioner has abandoned those claims.  Doc. 28 at 31.

matched Petitioner.  *Id.* at 172.  Those comments were correct statements of the evidence as presented during the trial.  Counsel had no reason to object to correct statements of the evidence.  *Cf. Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007) ("[C]ounsel cannot have rendered ineffective assistance of counsel by failing to make an objection that would have been meritless.").  This ground for relief is without merit.

       7.    <u>Conclusion</u>

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.  Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of trial counsel.

**D.    Ineffective Assistance of Appellate Counsel**

In his second ground for relief, Petitioner asserts his appellate counsel, who was the same attorney as at trial, provided ineffective assistance.  As with claims of ineffective assistance of trial counsel, claims of ineffective assistance of appellate counsel are reviewed under the two-part *Strickland* test.  *Loden v. McCarty*, 778 F.3d 484, 501 (5th Cir. 2015).  Petitioner must show that his appellate attorney's performance was deficient and that the deficient performance prejudiced Petitioner's defense.  *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013).

       1.    <u>Failure to Move for a New Trial</u>

Petitioner first says appellate counsel refused his request to move for a new trial, and instead, Petitioner had to file his own pro se motion, which the trial court rejected because it was not filed by counsel.  Petitioner asserts he effectively was denied counsel during this critical stage of the

proceedings and missed an opportunity to file a motion for a new trial, despite several grounds for granting the motion.

Petitioner is correct that he is entitled to counsel during this post-trial, pre-appeal period of time in which he may file a motion for a new trial. *McAfee v. Thaler*, 630 F.3d 383, 393 (5th Cir. 2011). In order for Petitioner to prevail on this claim, he must show counsel's decision not to move for a new trial was objectively unreasonable as a matter of strategy and that there is a reasonable probability, had counsel moved for a new trial, the trial court would have granted the motion. *Id.* at 394. In his pro se motion, Petitioner argued he was entitled to a new trial because, he said, the trial court had denied a continuance to allow Petitioner to collect more DNA testing, the verdict is contrary to the law and the evidence, the prosecution had committed misconduct, and his counsel was ineffective.

Petitioner fails to meet the *Strickland* standard. Petitioner notes a host of potential issues that could have been raised in a motion for new trial or that were raised in Petitioner's pro se motion. But those issues are either the same ones he now says counsel was ineffective for not raising, which this Court has rejected above; or the issue itself is counsel's performance, which generally is best left to be raised on collateral appeal rather than in a motion for new trial or direct appeal. *See Robinson v. State*, 16 S.W.3d 808, 810–11 (Tex. Crim. App. 2000); *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997). And even if counsel's performance could be considered deficient, Petitioner fails to demonstrate how counsel's performance prejudiced him. He says only that the issues he wanted raised in a motion for a new trial "would have resulted in a remand to the trial court for a new trial." Doc. 30 at 104. Petitioner's say so alone cannot establish prejudice. *See Ross*, 694

17

F.2d at 1012.  Because Petitioner cannot meet the high burden under *Strickland*, this ground for relief also fails.

> 2.   Failure to Raise Meritorious Grounds on Appeal

Petitioner next asserts appellate counsel was ineffective for raising only one issue on appeal regarding testimony of Petitioner's crack-cocaine use during the offense.  The court of appeals did not consider this issue because counsel had failed to preserve it for appeal by objecting to the testimony at trial.  Petitioner says counsel could have raised numerous other meritorious issues on appeal, and his failure to do so constitutes ineffective assistance.

Regarding issues raised on direct appeal, the *Strickland* standard "requires counsel to assert '[s]olid, meritorious arguments based on directly controlling precedent.'"  *Id.* at 320 (quoting *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003)).  Counsel, however, need not raise any and every potentially meritorious appellate issue available.  *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing *Evitts v. Lucey*, 469 U.S. 387, 394 (1985)).  In cases like this one, in which appellate counsel filed a merits brief on direct appeal, Petitioner must show there was a "clearly stronger" issue counsel could have raised on appeal but did not.  *Dorsey*, 720 F.3d at 320 (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

Counsel raised only one issue in the merits brief, regarding Petitioner's smoking of crack cocaine during the offense.  But because counsel had not objected to this testimony during trial, it was not preserved for review.  *See Everitt v. State*, 407 S.W.3d 259, 262 (Tex. Crim. App. 2013); Tex. R. App. Pro. 33.1(a).  Thus, there was no merit in counsel's merits brief, rendering Petitioner's direct appeal effectively waived.

Petitioner, however, has not alleged what "clearly stronger" issue appellate counsel could have, and should have, raised on appeal.  Petitioner says appellate counsel should have challenged trial counsel's performance.  But, as noted above, those claims are inappropriate for direct appeal and are best left for collateral review.  Moreover, because in this case appellate counsel and trial counsel were the same attorney, it would be especially problematic—perhaps even a conflict of interest—for counsel to assert his own ineffectiveness at trial as an issue for relief on appeal. *See Mendoza v. Stephens*, 783 F.3d 203, 207 & n.21 (5th Cir. 2015) (Owen, J., concurring in remand order) (per curiam) (citing cases including *Riner v. Owens*, 764 F.2d 1253, 1257 (7th Cir. 1985) ("[I]t would be most difficult if not professionally awkward to require a lawyer to argue on appeal his own ineffectiveness . . . .")); *cf. Massaro v. United States*, 538 U.S. 500, 506 (2003) (noting the inherent difficulties for appellate counsel attempting to argue trial counsel's ineffectiveness on direct appeal).  Because Petitioner does not suggest what meritorious ground for relief counsel should have raised on direct appeal, his ineffectiveness claim against appellate counsel fails.

3.      Conclusion

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.  Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of appellate counsel.

**D.      Trial Court Error**

In his final ground for relief, Petitioner asserts the trial court violated his Sixth and Fourteenth Amendment rights by refusing to appoint new counsel on appeal.  He says allowing trial

counsel to represent him on appeal presented a conflict of interest, which Petitioner did not waive. He argues the trial court should have granted Petitioner's motion to appoint new counsel on appeal.

To prove a violation of his constitutional rights, Petitioner must show "that an actual conflict of interest adversely affected counsel's performance." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000); *see Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). If Petitioner cannot show an actual conflict, he must demonstrate "a reasonable probability that the conflict prejudiced the defense." *Bostick v. Quarterman*, 580 F.3d 303, 306 n.2 (5th Cir. 2009).

Petitioner has satisfied neither standard. Petitioner alleges his counsel operated with an actual conflict of interest because he was appointed on appeal after representing Petitioner at trial and, thus, could not assert claims of ineffective assistance on appeal. But as discussed above, any claims of ineffective assistance were rightfully left for Petitioner's collateral appeals. *See Robinson*, 16 S.W.3d at 810–11. Counsel's decision not to raise those claims on direct appeal was proper and not the result of a conflict of interest. Nor has Petitioner shown a reasonable probability that representation by a different attorney, one acting without the alleged "conflict" of Petitioner's trial counsel, would have yielded a different outcome on appeal. *See Perillo*, 205 F.3d at 781. Petitioner does not explain what claims a different attorney could have brought or whether those hypothetical claims would have been successful. Because Petitioner fails to establish his attorney acted under a conflict of interest, his claim against the trial court has no merit.

## **RECOMMENDATION**

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

**OBJECTIONS**

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

**SIGNED** on September 2, 2015.

_____

MARK LANE
UNITED STATES MAGISTRATE JUDGE